**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | No. 19-18467 |
| | ) | |
| AMERICAN PAIN SOCIETY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Deborah Thorne |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**ORDER APPROVING AUCTION SALE OF ESTATE'S RIGHT TITLE
<u>AND INTEREST IN *THE JOURNAL OF PAIN*</u>**

This matter comes before the Court on the Motion of Michael K. Desmond, not individually but solely in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate of American Pain Society ("the Debtor"), by his attorneys and pursuant to 11 U.S.C. 363 and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order approving an auction sale the Estate's right title and interest in *The Journal of Pain* ("Motion") to the United States Association for the Study of Pain, Inc. ("Buyer"), due notice having been given and the Count being fully advised:

**THIS COURT FINDS THAT:** [1]

A. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)and (N);

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion [*Dkt No.* 35] .

B. Buyer is a good faith purchaser for value under 11 U.S.C. § 363(m) and as such is entitled to all the protections afforded thereby;

C. On November 7, 2019, this Court entered the Bidding Procedures Order [*Dkt. No.* 36] authorizing the Trustee to conduct the auction sale;

D. On November 7, 2019, the Trustee served a Notice of Auction Sale, Bidding Procedures and Final Sale hearing on all creditors, parties in interest and persons expressing interest in acquiring the rights to *The Journal of Pain.* [*Dkt. No.* 40];

E. On December 9, 2019, the Trustee conducted an Auction Sale of the Estate's right, title, and interest in *The Journal of Pain,* at which time the Buyer made the highest and best offer in the amount of $145,000.00;

**IT IS HEREBY ORDERED:**

1. **Sale Motion.** The Sale Motion is granted and the Trustee is authorized to sell the Estate's right, title, and interest in *The Journal of Pain* ("Purchased Assets") to the Buyer for the amount of $145,000.00 pursuant to the terms of the Asset Purchase Agreement attached hereto as Exhibit 1 ("Asset Purchase Agreement").

2. **Sale Pursuant to 363(f).** The Estate's right title and interest in *The Journal of Pain* shall be transferred to Buyer, as the successful bidder at the auction, free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. 363(f), and any such liens, claims, encumbrances and interests against the Debtor or the Estate shall attach to the proceeds of the sale.

3. **Notice.** Notice of the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, was adequate, reasonable, appropriate, and proper under the circumstances and complied in all respects with Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4. **Fair Purchase Price.** The consideration provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and adequate and is the highest and best bid for the Purchased Assets at the Auction; (ii) constitutes reasonably equivalent value, fair consideration, and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and similar laws); and (iii) will provide an equal or greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative.

5. **Trustee is Authorized to Execute Asset Purchase Agreement.** The Trustee is authorized to execute the Asset Purchase Agreement and all related documents required to close the sale (including, but not limited to, all related Bill of Sale, and any ancillary agreements thereto (collectively, the *"Related Agreements*" contemplated thereby). The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Trustee is authorized to execute the Asset Purchase Agreement (including, but not limited to, all Related Agreements contemplated thereby).

**Transfer of Assets Free and Clear.**

6. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets in accordance with the terms of the Asset Purchase Agreement. Pursuant to Section 5 of the Asset Purchase Agreement, the Purchased Assets shall be transferred to the Buyer and, upon Closing, such transfer shall: (i) be valid, legal, binding, and effective; (ii) vest the Buyer with all right, title, and interest of the Estate in and to the Purchased Assets; and (iii) upon payment of the Purchase Price, and except as otherwise specifically provided for in the Asset Purchase Agreement or this Order, such transfer shall be free and clear of all

Claims (as defined in section 101(5) of the Bankruptcy Code) in accordance with section 363(f) of the Bankruptcy Code, with all Claims that represent interests in property to attach to the proceeds of the sale transaction, in the same order of their priority and with the same validity, force, and effect that they now have against the Purchased Assets, subject to any claims and defenses any of the Estate may possess with respect thereto.

7. On the Closing Date, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in and to all of the Purchased Assets to the Buyer.

8. **Good Faith.** The transactions contemplated by the Asset Purchase Agreement and Related Agreements are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the sale transaction shall neither affect the validity of the sale transaction nor the transfer of the Purchased Assets to the Buyer free and clear of Claims, unless such authorization is duly stayed before the Closing Date pending such appeal. The Buyer is a good faith purchaser of the Purchased Assets and is granted and entitled to all of the benefits and protections afforded to a good faith purchaser under section 363(m) of the Bankruptcy Code. The Trustee and the Buyer will be acting in good faith if they proceed to consummate the sale at any time after entry of this Sale Order.

9. **No Successor.** The Buyer shall not as a result of these 363 sales under the Bankruptcy Code be deemed a successor to the Debtor, the Trustee or the Estate. The

transfer of the Purchased Assets to Buyer under the Asset Purchase Agreement shall not result in: (i) the Buyer or the Purchased Assets having any liability or responsibility for any Claim against the Estate; (ii) the Buyer or the Purchased Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim against the Debtor or the Estate; or (iii) the Buyer having any liability or responsibility to the Estate except as otherwise expressly set forth in the Purchase Agreement.

10. **Waiver of Bankruptcy Rules 6004(h), 6006(d) and 7062.** Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062, or any applicable provisions of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the Northern District of Illinois, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction, and the Trustee and the Buyer may close the sale transaction as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

11. **Binding Effect of Sale Order.** The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon the Debtor, the Trustee, the Estate its creditors, all holders of equity interests in the Debtor, all holders of any Claims, whether known or unknown, against the Debtor, any holders of Claims against or on all or any portion of the Purchased Assets, including, but not limited to, all contract counterparties, holders

of leasehold interests, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, and each of their respective affiliates, successors, and assigns. The Asset Purchase Agreement and this Sale Order shall inure to the benefit of the Debtor, the Trustee, the Estate its creditors and the Buyer.

12. **Conflicts; Precedence.** In the event that there is a direct conflict between the terms of this Sale Order, the Asset Purchase Agreement, or any documents executed in connection therewith, the provisions contained in this Sale Order, shall govern.

13. **Modification of Purchase Agreement.** The Trustee is authorized to execute modifications of the Asset Purchase Agreement, the Related Agreements, and any other documents or other instruments executed in connection therewith, without further order of the Court; provided that (i) any such modification, amendment, or supplement shall not materially change the terms of the Asset Purchase Agreement, Related Agreements, or any documents or other instruments executed in connection therewith;

14. **Taxes.** Except as otherwise expressly provided in the Asset Purchase Agreement, all obligations of the Debtor and the Estate relating to Taxes, whether arising under any law, by the Purchase Agreement, or otherwise shall be the obligation of and fulfilled and paid by the Estate.

15. **Retention of Jurisdiction.** This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Sale Order, the Purchase Agreement, Related Agreements, all amendments thereto, and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order, the Purchase Agreement, Related Agreements, and to enforce the injunctions set forth herein.

Dated: December 31, 2019

Honorable Deborah Thorne
Bankruptcy Judge

Prepared by:

Michael K. Desmond (#6208809)
Justin M. Herzog (#6324047)
FIGLIULO & SILVERMAN, P.C.
10 S. LaSalle Street, Suite 3600
Chicago, Illinois 60603
Tel: (312) 251-4600
Fax: (312) 251-4610

# EXHIBIT 1

# ASSET PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (the "Agreement"), dated this 31st day of December , 2019 is entered into by and between **MICHAEL K. DESMOND, not individually, but solely in his capacity as Chapter 7 Trustee** of the bankruptcy estate of American Pain Society ("Seller") and **the United States Association for the Study of Pain, Inc.** ("Buyer") together referred to herein as (the "Parties").

## RECITALS

A. On June 28, 2019 (the "Petition Date"), the American Pain Society ("Debtor") filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"), thereby commencing the case No. 19-18467 and creating the Debtor's estate (the "Estate").

B. On June 28, 2019, the Bankruptcy Court appointed Michael K. Desmond as Chapter 7 Trustee of the bankruptcy Estate ("Trustee").

C. As of the Petition Date, the Debtor held certain copyright and trademark rights to a widely circulated monthly medical research journal known as "*The Journal of Pain.*" The Debtor's rights to the *The Journal of Pain* are property of the bankruptcy Estate.

D. The Trustee, as Seller, has agreed to sell the Estate's right, title, and interest in *The Journal of Pain*, and Buyer has agreed to purchase the Estate's right, title, and interest from Seller, upon and subject to all the terms and conditions set forth in this Agreement, on the Closing Date as hereinafter defined.

NOW, THEREFORE, in consideration of the foregoing Recitals, which are incorporated herein, and in consideration of the mutual covenants set forth herein, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 1. DEFINITIONS

For purposes of this Agreement, the terms hereafter set forth shall have the following meanings:

(a) **Closing Date**: The Closing Date shall be on the later of fourteen (14) calendar days after approval of this Agreement by the Bankruptcy Court, or such other date set forth in Paragraph 7.

(b) **Debtor** : American Pain Society, debtor in Case No. 19-18467.

(c) **Effective Date**: The Effective Date is the date of execution by Seller and inserted by Seller in the signature page.

## 2. AGREEMENT TO SELL

Seller agrees to sell, transfer, assign and convey the Estate's right, title, and interest *The Journal of Pain,* including all existing copyright, trademark rights, licenses and intellectual property for *The Journal of Pain* owned by the Debtor as of the Petition Date (the "Purchased Assets"), at the price and on the terms and conditions hereafter set forth and the specific terms and conditions as set forth in the Order Approving Auction of Sale of Estate's Right Title and Interest in the *Journal of Pain*, entered in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division in Case No. 19-18467 entered on December 31, 2019 (the "Order"). If any conflict of terms exist between this Purchase and Sale Agreement and the Order, the Order shall be binding. The Purchased Assets will be sold free and clear of all liens, claims, encumbrances and interests with valid liens, if any, attaching to the proceeds of the sale.

## 3. PURCHASE PRICE

The purchase price (the "Purchase Price") shall be One Hundred and Forty-Five Thousand and 00/100ths Dollars ($145,000.00) in cash.

## 4. EARNEST MONEY.

Buyer has tendered to Seller a Good Faith Deposit in the amount of $14,500.00 in connection with the auction sale approved by the Bankruptcy Court. The Good Faith Deposit shall be held in escrow by the Seller pending closing of the sale, and shall be applied to the Purchase Price at closing. If the party Buyer fails to close the sale (other than as a result of the Seller's breach), such party's Good Faith Deposit hall be retained by the Trustee as the Estate's sole and exclusive damages resulting from such failure to close.

## 5. EXCLUDED LIABILITIES.

Irrespective of any other provision in this Agreement to the contrary, Buyer is not agreeing to, and shall not, assume any liability, obligation, undertaking, commitment, expense or agreement relating to, or arising from the Seller, the Estate or the Purchased Assets, specifically including *The Journal of Pain,* of any kind, character or description, whether absolute, known, unknown, accrued, liquidated, unliquidated, contingent, or otherwise, incurred prior to Closing, and the execution and performance of this Agreement shall not render Buyer liable for any such liability, obligation, undertaking, commitment, expense or agreement. Seller shall remain liable for and pay and satisfy all such herein described liabilities, obligations, undertakings, commitments, expenses or agreements relating to, or arising from the Seller, the Estate or the Purchased Assets, specifically including *The Journal of Pain,* of any kind, character or description, whether

absolute, known, unknown, accrued, liquidated, unliquidated, contingent, or otherwise, incurred prior to Closing.

6. **BUYER FINANCING.**

Buyer represents to Seller that this is a cash purchase and this agreement is not contingent upon Buyer's ability to obtain financing.

7. **CLOSING DATE.**

Time shall be of the essence of this Agreement. The closing of this transaction ("Closing") shall take place on or before January 14, 2020, or such earlier or later date as may be mutually acceptable to the parties hereto (the "Closing Date") at the offices of the Trustee's Counsel, Figliulo & Silverman, P.C., 10 S. LaSalle St., Suite 3600, Chicago, Illinois 60603, or at such other place as may be approved in writing by the parties hereto or their respective attorneys.

8. **EXCLUDED ASSETS**

Anything herein to the contract notwithstanding, Seller shall retain and shall not sell, convey, transfer, assign or deliver to Buyer any interest in the following assets of Seller, and Buyer hereby acknowledges that it does not have nor will it acquire at Closing or thereafter an interest of any kind whatsoever in the following assets and properties of Seller:

(a) Any cash or cash equivalents whatsoever, whether on hand, in banks or elsewhere;
(b) Any and all trade accounts receivable and all books and records relating thereto;
(c) Journal Publishing Agreement with Elsevier, Inc. dated September 7, 2017 and any rights thereunder;
(d) Debtor's corporate minute books and accounting books and records;
(e) Causes of action and litigation rights existing as of the Closing in favor of Seller, including any and all causes of action arising under Sections 510, 544-553 of the Bankruptcy Code and all original books and records relating thereto, and further including, but not limited to, any and all assets, if any, recovered by Seller's estate in the Bankruptcy Case from the prosecution and/or resolution of any and all of the causes of action and litigation rights set forth herein; and
(f) Rights or other tax benefits arising from Seller's arising prior to the Closing.

9. **SELLER'S REPRESENTATIONS AND WARRANTIES.**

Seller, as a material inducement to the execution of this Agreement by Buyer, represents and warrants to Buyer:

(a) Seller is the Court appointed Bankruptcy Trustee and has the right and power to sell and assign, as the case may be, the Purchased Assets pursuant to Sections 363 and 365 of the Bankruptcy Code, subject only to the approval of the Bankruptcy Court.

(b) Subject only to the prior approval of the Bankruptcy Court, Seller has full power and authority to execute and perform this Agreement and all documents and instruments to be executed by Seller pursuant to this Agreement. This Agreement has been executed and delivered by duly authorized officers of Seller. Upon the approval of the Bankruptcy Court, this Agreement shall constitute a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

(c) To the best of the Trustee's knowledge, the execution and delivery of the Agreement by Seller, nor the consummation by Seller of the transactions contemplated hereby, will conflict with or result in a breach of any of the terms, conditions or provisions of Seller's Certificate of Incorporation of by-laws, or of any statute or administrative regulation, or of any order, writ, injunction, judgment or decree of any court or governmental authority or of any arbitration award to which Seller is a party or by which Seller is bound.

**BUYER HAS INSPECTED THE PURCHASED ASSETS TO THE EXTENT BUYER DEEMS NECESSARY IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT AND IS BUYING THE ASSETS AS IS WHERE IS. EXCEPT AS EXPRESSLY SET FORTH HEREIN, BUYER ACKNOWLEDGES THAT SELLER HAS NOT MADE, DOES NOT INTEND TO MAKE, AND HEREBY EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS OR IMPLIED REPRESENTATIONS, WARRANTIES, STATEMENTS OR CONDITIONS OF ANY KIND OR NATURE WHATSOEVER AS TO THE VALIDITY OF ANY COPYRIGHT, TRADEMARK, RIGHTS, LICENSES OR INTELLECTUAL PROPERTY ASSIGNED TO THE BUYER, THE PRESENT, PAST OR FUTURE PHYSICAL CONDITION OR QUALITY OF THE ASSETS, INCOME, EXPENSES, OPERATION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER MATTER AFFECTING OR RELATING TO THE DEBTOR'S BUSINESS OR THE PURCHASED ASSETS.**

**10. BUYER'S REPRESENTATIONS AND WARRANTIES.**

Buyer, as a material inducement to the execution of this Agreement by Seller, represents and warrants to Seller

(a) Buyer has full power and authority to execute and perform this Agreement and all documents and instruments to be executed by Buyer pursuant to this Agreement. This Agreement has been executed and delivered by duly authorized officers of

Buyer. Upon the approval of the Bankruptcy Court, this Agreement shall constitute a legal, valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms.

(b) Neither the execution and delivery of the Agreement by Buyer, nor the consummation by Buyer of the transactions contemplated hereby, will conflict with or result in a breach of any of the terms, conditions or provisions of Buyer's Certificate of Incorporation, or of any order, writ, injunction, judgment or decree of any court or governmental authority or of any arbitration award to which Buyer is a party or by which Buyer is bound.

## 11. APPROVAL OF BANKRUPTCY COURT

Seller's agreement to sell is expressly conditioned on approval of this Agreement by the United States Bankruptcy Court for the Northern District of Illinois, presiding over the bankruptcy case styled, In Re: American Pain Society, Case No. 19-18467. Seller shall be solely responsible for obtaining approval of the Bankruptcy Court.

## 12. INDEMNITY OF SELLER.

Buyer agrees to indemnify, defend and hold harmless, including payment of attorney's fees and costs, Seller, his attorneys, agents, affiliates, successors and assigns (the "Seller Indemnified Parties") from and against any and all Losses incurred by the Seller Indemnified Parties as a result of or arising out of (a) any inaccuracy in or breach of any of the representations, warranties or covenants made by Buyer in this Agreement or any document or agreement delivered in connection with this Agreement; (b) the use of the Purchased Assets or operation of Buyer's business subsequent to the Closing Date; or (c) any action or omission of Buyer or Buyer's officers, managers, members, independent contractors, employees, agents and affiliates.

## 13. MISCELLANEOUS

13.1 Governing Law. It is the intention of the parties that internal laws of the State of Illinois (irrespective of its choice of law principles) shall govern the validity of this Agreement.

13.2 Assignment; Successors and Assigns. Neither this Agreement nor any rights, benefits or obligations set forth herein may be assigned by any of the parties hereto, except that Buyer may, without consent of any other party, assign this Agreement and any of the provisions hereof: (a) to any affiliate of Buyer; (b) in connection with the sale of all or a substantial part of its assets or business; or (c) to any of its financing sources as collateral security. Except as otherwise provided herein, each and all of the covenants, terms, provisions and agreements contained herein shall be binding upon, and shall inure to the benefit of, the successors, executors, heirs, representatives, administrators and assigns of each of the respective parties.

13.3 Severability. If any provision of this Agreement, or the application thereof, shall for any reason and to any extent be invalid or unenforceable, the remainder of this Agreement and application of such provisions to other persons or circumstances shall be interpreted so as best to reasonably effect the intent of the parties hereto. The parties further agree to replace any such invalid or unenforceable provisions of this Agreement with valid and enforceable provisions which will achieve, to the extent possible, the economic, business and other purposes of the invalid or unenforceable provisions.

13.4 Entire Agreement. This Agreement, the Exhibits and Schedules hereto and all other documents referenced herein constitute the entire understanding and agreement of the parties with respect to the subject matter hereof and supersede all prior and contemporaneous agreements or understandings, written or oral, among the parties with respect to such subject matter.

13.5 Counterparts. This Agreement may be executed in any number of counterparts and by facsimile, each of which shall be an original as against any party whose signature appears thereon and all of which together shall constitute one and the same instrument.

13.6 Expenses. Subject to the terms and conditions of this Agreement, each of the parties shall bear its own expenses incurred in connection herewith.

13.7 Amendment. Any term or provision of this Agreement may be amended, and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound thereby.

13.8 No Waiver. The failure of any party to enforce any of the provisions hereof shall not be construed to be a waiver of the right of such party thereafter to enforce such provision.

13.9 Attorneys' Fees. Should a suit be brought relating to this Agreement, and the Trustee is the prevailing party, the Trustee shall be entitled to recover reasonable attorneys' fees (including, without limitation, costs, expenses and fees of any appeal).

13.10 Notices. Whenever any party hereto desires or is required to give any notice, demand or request with respect to this Agreement, each such communication shall be in writing and shall be effective only if it is delivered by personal service, sent by express courier service with guaranteed next day delivery, charges prepaid, or mailed by United States certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Buyer:

**United States Association for the Study of Pain, Inc.**
7 Gladden Rd
Annapolis, MD 21401

with a copy to:

______

______

Attn: Fax: ________

If to Seller:
MICHAEL K. DESMOND, not individually but solely in his capacity as Chapter 7 Trustee for American Pain Society
10 S. LaSalle St. Ste. 3600
Chicago, IL 60603

with a copy to:
Justin M. Herzog (#6324047)
FIGLIULO & SILVERMAN, P.C.
10 S. LaSalle Street, Suite 3600
Chicago, Illinois 60603

Each such communication shall be effective when received by the addressee thereof or, if sent by express courier, within one day after pick-up by such courier or, if sent by registered or certified mail in the manner set forth above, three days after being deposited in the United States mail. Any party may change its address for such communications by giving notice thereof to the other parties in conformity with this section.

13.11 Construction of Agreement. This Agreement has been negotiated by the parties and reviewed by their respective attorneys and the language hereof shall not be construed for or against any party.

13.12 Further Assurances. Upon the reasonable request of Purchaser, Seller will on and after the Closing Date execute and deliver to Buyer such other documents, releases, assignments and other instruments as may be required to effectuate completely the transfer and assignment to Buyer of, and to vest fully in Buyer title to, the Purchased Assets.

13.13 Captions and Headings. The captions and headings used in this Agreement are for convenience of reference only and do not constitute a part of this Agreement and shall not be deemed to limit, characterize or in any way affect any provision of this Agreement.

13.14 Submission to Jurisdiction; Choice of Forum. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in Cook County, Illinois, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated herein. Each of the parties waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety or other security that might be required of any other party with respect thereto. Each party hereby authorizes and accepts service of process sufficient for personal jurisdiction in any action against it as contemplated by this Section by registered or certified mail, return receipt requested, postage prepaid, to its address for the giving of notices as set forth in this Agreement.

13.15 Waiver of Jury Trial. The parties hereto hereby expressly waive any right to a trial by jury in any action or proceeding to enforce or defend any right, power or remedy under or in connection with this Agreement or the transactions contemplated thereby or under or in connection with any amendment, instrument, document or agreement delivered or which may in the future be delivered in connection herewith or therewith or arising from any relationship

existing in connection with this Agreement or the transactions contemplated thereby, and agree that any such action shall be tried before a court and not before a jury. The terms and provisions of this Section constitute a material inducement for the parties entering into this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed and delivered the day and the date first above written.

**BUYER:**

**United States Association for the Study of Pain, Inc.**

**By:**___________________________________

**Dated:**_ ________________

**SELLER:**

**MICHAEL K. DESMOND, not individually but solely in his capacity as Chapter 7 Trustee for American Pain Society**

**By:**

________________________________________

**Trustee**

**Dated:**__________________